**In re Sean B. LYLE, Debtor.**

**Sean B. Lyle, Plaintiff,**

**v.**

**Santa Clara County Department of Child Support Services, Defendant.**

**Bankruptcy No. 04–51147–MM. Adversary No. 04–5335.**

United States Bankruptcy Court, N.D. California.

March 4, 2005.

Anita J. Jaeger, Monterey, CA, for debtor.

## OPINION AND ORDER THEREON

MARILYN MORGAN, Bankruptcy Judge.

Before the court is the debtor's motion for turnover of his tax refund by the Santa Clara County Department of Child Support Services and sanctions for violation of the automatic stay. Because the funds are not property of the estate, the motion must be denied.

### BACKGROUND

At some time prior to bankruptcy, Sean Lyle became legally obligated to make child support payments to his former wife. When Lyle fell behind in his support payments, his former wife applied for public assistance and, as a condition to receiving aid, she assigned her right to receive the child support payments to the Santa Clara County Department of Child Support Services (SCCDCSS). To collect the past due payments, SCCDCSS reported the delinquency to the California Department of Child Support Services, which in turn, set procedures into motion to collect the back support payments through a federal tax intercept program set forth in 26 U.S.C. § 6402. Under § 6402(c), after a state complies with certain procedural and due process requirements, the United States Department of the Treasury is required to reduce an individual's overpayment of federal income tax by the amount of past due child support and remit the amount of the reduction to the state. In October 2003, pursuant to the required procedures, the State of California notified Lyle that his delinquent child support obligations would be subject to collection through the federal

tax intercept program and, if he wanted to dispute his past due obligations, that he should contact SCCDCSS. There is no indication that Lyle ever lodged such a dispute.

On February 12, 2004, Lyle filed his individual income tax return for the 2003 tax year. In his return, he reported an overpayment of $3,172 and requested a refund. Lyle planned to use the funds for his current family's living expenses. However, on February 18, 2004, the Treasury Department matched Lyle's 2003 overpayment against his delinquent child support liability.

On February 25, 2004, Lyle filed his chapter 13 petition. Lyle's amended schedules list his child support debt to SCCDCSS in the amount of $20,507.33 and an asset of $3,172 related to his anticipated 2003 tax refund. On February 25, 2004, Lyle's attorney faxed notice of the bankruptcy to Santa Clara County and requested that an ongoing wage garnishment be stopped. Shortly thereafter, Lyle received a letter from the Treasury Department, dated February 27, 2004, advising Lyle that it had intercepted his $3,172 overpayment and had applied it against his child support arrearage. The letter stated that the funds had been sent to California's Child Support Intercept Agency and listed a payment date of February 27, 2004. The State of California, in turn, allocated the funds between Lyle's delinquent child support debt in multiple California counties. SCCDCSS received $2,644.55 from the State on April 1, 2004 and, despite multiple requests, has refused to return these funds to Lyle. Lyle's motion requests the turnover of the funds, which are alleged to belong to the estate, and a finding that SCCDCSS's post-petition refusal to turn over the funds constitutes a violation of the automatic stay.

## LEGAL ANALYSIS

### I. *Turnover is Limited to the Amount of Refund to Which the Debtor is Entitled.*

■ Both Lyle and SCCDCSS focus their argument on whether SCCDCSS had a pre-petition statutory lien against the tax intercept funds and, if so, whether the lien is avoidable. The answer to those questions, however, will not resolve the issues before the court. It is well recognized that, under appropriate circumstances, collateral in the possession of a secured creditor may be drawn into a bankruptcy estate. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 206, 103 S.Ct. 2309, 2314, 76 L.Ed.2d 515 (1983). Further, the Bankruptcy Code expressly provides that post-petition enforcement of a lien against property of the estate violates the automatic stay. 11 U.S.C. § 362(a)(4). Thus, even if this court were to find that SCCDCSS had a statutory lien against the tax intercept funds, it would not preclude Lyle from succeeding on his motion. As a result, it is necessary to look beyond the argument for guidance in resolving the parties' dispute.

■ Under §§ 542(a) and 363 of the Bankruptcy Code, an entity in possession or control of property of the estate is required, subject to certain exceptions, to deliver that property to the trustee of the bankruptcy estate. The crucial first question raised by a turnover motion is whether the property to be turned over·is property of the estate. The two cases on which SCCDCSS principally relies, *In re Conley*, 54 B.R. 363 (Bankr.S.D.Ohio 1985), and *In re Biddle*, 31 B.R. 449 (Bankr.N.D.Iowa 1983), do not address that question. In both cases, the courts considered whether a state's pre-petition receipt of tax intercept funds to satisfy past due child support constituted a preferential transfer. The courts in *Biddle* and *Conley* found that the

tax intercept program set forth in 26 U.S.C. § 6402(c) creates a statutory lien against a taxpayer's income tax overpayment to the extent that the taxpayer owes past due child support. These courts concluded that the pre-petition transfer of funds pursuant to the lien was not preferential because the creditor received no more than it would have received in a liquidation case. Because neither court considered whether the funds intercepted for past due child support were property of the debtor's bankruptcy estate, these decisions are not dispositive of the issues presented here.

■■■ Generally, courts have recognized that a taxpayer holds a property interest in a federal income tax refund as of the end of the tax year to which the refund relates. *In re Martin*, 167 B.R. 609, 612–13 (Bankr.D.Or.1994). Further, when a taxpayer files for bankruptcy relief, the debtor's interest in a prior year's income tax refund becomes part of the debtor's bankruptcy estate. *In re Luongo*, 259 F.3d 323, 335 (5th Cir.2001). However, the debtor's interest in a *refund* does not necessarily extend to the full value of any *overpayment* of taxes in a given tax year. *Id.* Rather, the express provisions of the Internal Revenue Code make it clear that the debtor's interest in a refund is contingent on the subsequent statutory determination of what portion of the overpayment, if any, the debtor is entitled to receive as a refund. *Martin*, 167 B.R. at 613.

The authority to issue a tax refund, and a taxpayer's concomitant right to receive one, is defined in 26 U.S.C. § 6402. Section 6402(a) provides that "[i]n the case of any overpayment, the Secretary [of the Treasury], . . . shall, subject to subsections (c), (d) and (e), refund any balance to such person." The right to issue or receive a refund is expressly contingent on any limi-

tations that may be contained in § 6402(c), (d) or (e). Under § 6402(c), the only subsection at issue in this case, the Secretary must reduce the amount of a person's tax overpayment by the amount of past due support owed by that person once a state has satisfied the notice and procedural requirements for a tax intercept. 26 C.F.R. § 301.6402–5. The Secretary is then authorized to refund the remaining balance, if any. 26 U.S.C. § 6402(a).

In light of the mandatory scheme described in §§ 6402(a) and (c), it is apparent that Lyle never became entitled to receive any tax refund. Lyle has not suggested that California failed to follow proper procedures in requesting interception of Lyle's tax overpayment in connection with his past due support obligations. Additionally, there is no dispute that Lyle's past due support obligations far exceeded the $3,127 overpayment. As a result, the Secretary was statutorily required to reduce the overpayment to zero, leaving no balance to refund. Because the value of Lyle's interest in a tax refund was zero, there was nothing to become property of his estate. *Luongo*, 259 F.3d at 335 (tax refund did not become property of the estate where unpaid tax liabilities from prior years exceeded the amount of the overpayment); *Martin*, 167 B.R. at 613 (refund claim is contingent on IRS determination as to whether any of the overpayment was to be credited against liabilities listed in 26 C.F.R. § 301–6402(a)(6)). *Accord, In re Farmers Markets, Inc.*, 792 F.2d 1400, 1403 (9th Cir.1986)(an estate may take no greater interest in property than that held by the debtor).

In addition to the plain language of the Internal Revenue Code, the United States Supreme Court has acknowledged that § 6402(c) reductions occur prior to determining the amount of a refund. *Sorenson v. Secretary of the Treasury*, 475 U.S. 851,

856, 106 S.Ct. 1600, 1604, 89 L.Ed.2d 855 (1986). In *Sorenson*, the Court considered whether excess earned income credits constituted "overpayments" that were subject to reduction for past due child support under § 6402(c). The Court concluded that excess earned income credits were overpayments subject to reduction. As part of its analysis, the Court recognized that § 6402(c) "directs the Secretary [of the Treasury] to give priority to a State's claim for recoupment of welfare payments . . . over an individual's claim for refund of tax overpayment." *Id.* As a result, while an interest in a refund of an undetermined amount may arise as of the end of the tax year in which an overpayment has been made, the value of that interest can only be determined following the statutory reductions provided in § 6402, which include the taxpayer's past due child support obligations.

An analogous situation involves an estate created after the death of a taxpayer. Two courts have concluded that funds attributable to tax overpayments did not become property of a decedent's estate because the decedent was not entitled to a refund. Both cases considered whether a tax overpayment in a given year became an asset of the decedent's estate even though § 6402(a) allows the Secretary to credit the overpayment against tax deficiencies from prior years. *Estate of Bender v. Commissioner of Internal Revenue*, 827 F.2d 884 (3d Cir.1987), *Bellows v. United States*, 1986 WL 7057 (N.D.Ill. June 19, 1986). The district court in *Bellows* reasoned that "the mere filing and acceptance of a claim for refund alone does not create an asset in the estate. . . . The refund owed to the estate is not the entire amount overpaid in a given tax year, but rather the amount remaining after pre-existing liabilities have been paid." *Bellows*, 1986 WL 7057, at * 2. The court concluded that only the balance to be re-

funded after a statutory reduction for the decedent's prior years' tax deficiencies became an estate asset. In *Bender*, the third circuit used slightly different reasoning and determined that the estate's hope that the Internal Revenue Service might refund the overpayment rather than offset the overpayment against the decedent's prior years' tax liabilities was a mere expectancy that did not rise to the level of a valid property interest. *Bender*, 827 F.2d at 887.

The distinction between a tax overpayment and a right to a refund was raised again in *In re Pettibone Corp.*, 151 B.R. 156, 163 (Bankr.N.D.Ill.1992), *aff'd*, 161 B.R. 960 (N.D.Ill.1993), *aff'd in part*, 34 F.3d 536 (1994). Although the issue in *Pettibone* concerned the mutuality of debts for purposes of set off under 11 U.S.C. § 553, the bankruptcy court had occasion to distinguish between an "overpayment," which is any payment over and above the tax liability, and "refund," which is the obligation of the government to pay the taxpayer an overpayment. *Id.* at 163. Relying on the language of 26 U.S.C. § 6402(a) and related Treasury Department regulations, the bankruptcy court concluded that a refund only includes what a taxpayer is owed after the Internal Revenue Service credits an overpayment against other obligations of the taxpayer as set forth in the statute. *Accord, In re Siebert Trailers, Inc.*, 132 B.R. 37, 41 (Bankr.E.D.Cal.1991)(IRS's right to reduce a tax overpayment is superior to that of a creditor with a perfected security interest in the debtor's general intangibles, including tax refunds).

■ Based on all of the above authority, the court concludes that even though a taxpayer holds a property interest in a federal income tax refund as of the end of a tax year, the value of that interest is

subject to a later statutory determination of the amount of any refund. Under the facts of this case, the debtor filed his 2003 income tax return reporting an overpayment of $3,127, but under § 6402, he was never entitled to a refund of any portion of that overpayment. The funds attributable to the overpayment did not become property of his estate and, as a result, SCCDCSS is under no duty to turn over the funds to the trustee.

II. *The Automatic Stay Protects Only Property of the Estate*

 Lyle's motion also seeks to recover attorneys' fees, costs and punitive damages because SCCDCSS violated the automatic stay by refusing to return the intercepted tax refund. While the court's research uncovered two decisions awarding damages for a violation of the automatic stay where a state agency received funds from a child support tax intercept, those cases are not persuasive. *In re Stucka,* 77 B.R. 777 (Bankr.C.D.Cal.1987); *In re Ashby,* 36 B.R. 976 (Bankr.D.Utah 1984). Neither case considered the difference between a tax overpayment and a taxpayer's more limited interest in a refund. In fact, in *Ashby,* the state agency conceded that it had violated the stay, and only the issues of contempt and damages were before the court. In *Stucka,* the bankruptcy court simply accepted the principle that a debtor's interest in a tax refund becomes property of the estate, without considering how the provisions of the Internal Revenue Code affect and define what portion of an overpayment becomes a refund.

Here, the value of Lyle's claim to a refund was statutorily determined to be zero, and the intercepted funds did not become part of Lyle's estate. Because the intercepted funds are not property of the estate, SCCDCSS did not violate the automatic stay by retaining them. In light of this conclusion, there is no need to consider whether sovereign immunity precludes the debtor's request for an award of attorney's fees and punitive damages.

CONCLUSION

For the reasons set forth above, the plaintiff's motion for turnover of property and sanctions for violation of the automatic stay is denied.

Good cause appearing, IT IS SO ORDERED.