In re Anthony S. GOULD, Debtor,

United States of America, Appellant,

v.

Anthony S. Gould, Appellee.

BAP No. NC–08–1100–JuMkD.
Bankruptcy No. 05–50292.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Nov. 20, 2008.

Filed Feb. 11, 2009.

Jennifer D. Auchterlonie, Trial Attorney, Tax Division, U.S. Dept. of Justice, Washington, DC, for appellant.

Leela V. Menon, The Law Offices of David Boone, San Jose, CA, for appellee.

Before: JURY, MARKELL and DUNN, Bankruptcy Judges.

## OPINION

JURY, Bankruptcy Judge:

The United States of America, on behalf of the IRS, appeals the bankruptcy court's order denying its motion for relief from stay.

The IRS sought relief from stay under § 362(d)(1) and (2)[1] in order to set off the prepetition tax payments of Anthony S. Gould ("Debtor") against his prepetition tax liabilities under 26 U.S.C. § 6402(a)[2] and § 553.

In a published decision, *In re Gould,* 389 B.R. 105 (Bankr.N.D.Cal.2008), the bankruptcy court ultimately denied the IRS's motion based on its conclusion that the IRS could not establish a right of setoff under § 553 for two reasons. First, the bankruptcy court held that Debtor's allowed exemption in certain tax refunds was superior to the IRS's setoff rights under § 553. The court reasoned that the Supreme Court's holding in *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), controlled because the IRS did not object to Debtor's exemption claim. Therefore, the court determined that even if Debtor had no colorable basis for his claimed exemption, it was allowed and could no longer be challenged by the IRS through setoff.

Second, the bankruptcy court exercised its equitable discretion to disallow the IRS's setoff under § 553 even though (1) the IRS established that it had a right of setoff under IRC § 6402(a) and (2) the bankruptcy court had found the requirements of § 553 were met.

Because we hold that the bankruptcy court premised its ruling on an erroneous view of the law, we REVERSE for the reasons set forth below and REMAND for entry of an order consistent with this opinion.

## I. FACTS[3]

The material facts relevant to this appeal are undisputed and raise two straight-

---

**1.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, as enacted and promulgated prior to October 17, 2005, the effective date of most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, April 20, 2005, 119 Stat. 23 ("BAPC-

PA"), as the debtor's case was filed in advance of the BAPCPA effective date.

**2.** Citations to the Internal Revenue Code, 26 U.S.C. § 1 et seq. will be referred to as "IRC".

**3.** Most of the facts are taken from the bankruptcy court's published decision, *Gould,* 389 B.R. 105.

forward issues: (1) whether the IRS demonstrated the requisite cause for relief from the automatic stay under § 362(d)(1),[4] and (2) whether the IRS demonstrated that Debtor did not have equity in the tax refunds and whether they were necessary for an effective reorganization under § 362(d)(2).[5]

Debtor filed his petition, schedules and chapter 13 plan on January 20, 2005. The IRS filed its initial proof of claim against Debtor on February 24, 2005, which included estimated taxes due for 1999 to 2004.

On March 2, 2005, the IRS objected to the confirmation of Debtor's plan on the grounds that (1) the plan failed to provide for full payment of the IRS's priority claim and (2) Debtor's failure to file federal income tax returns for the years 1999–2004 made it difficult to determine the plan's feasibility. The confirmation hearing was continued so that Debtor could prepare and file his federal income tax returns and resolve the IRS's objections.

On May 26, 2005, Debtor filed an amended plan and amended Schedules B, C, D, and E. In his amended Schedule B, Debtor listed claims for federal income tax refunds for tax years 2002, 2003 and 2004. In his amended Schedule C, Debtor listed federal income tax refunds for tax years 2002, 2003 and 2004 totaling $11,047[6], claimed exempt under Cal.Code Civ. Proc. ("CCP") § 703.140(b)(5).[7] No party objected to Debtor's exemptions.

Debtor's amended plan was confirmed on October 5, 2005, without objection.[8]

In June and July of 2005, Debtor filed his tax returns for the years 1999 to 2004. Subsequently, the IRS filed several amended proofs of claim; however, the only one relevant for purposes of this appeal is its fourth and final amended proof of claim ("Fourth Amended Claim") in the amount of $9,972.44 divided as follows: (1) secured—$6,852, based on the IRS's right to setoff under IRC § 6402(a); (2) unsecured priority—$307.51 and (3) general unsecured—$2,812.93.

4. This subsection provides: "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; . . . ."

5. This subsection provides: "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—. . . (2)with respect to a stay of an act against property under subsection (a) of this section, if—(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization; . . . ."

6. Debtor claimed refunds of $11,047, but subsequently acknowledged that the amount was

$6,852. While the balances owing between the parties were unclear, they agreed that the IRS sought to set off $6,852.

7. This section, known as the wildcard exemption, states that Debtor may exempt his "aggregate interest, not to exceed in value nine hundred twenty-five dollars ($925) plus any unused amount of the exemption provided under paragraph (1), in any property." Paragraph (b)(1) of CCP § 703.140 referred to in (b)(5) provides an exemption for Debtor's "aggregate interest, not to exceed seventeen thousand four hundred twenty-five dollars ($17,-425) in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence. . . ." CCP § 703.140(b).

8. Debtor's amended plan called for payments of $75 per month based on his excess income over expenses, which would pay approximately two percent to general unsecured claims over thirty-seven months.

On October 25, 2005, the IRS filed its Motion for Relief from Stay to Set Off Tax Refund ("Motion"), which sought to apply the $6,852 that the IRS owed to Debtor against the $9,972.44 that Debtor owed the IRS. The IRS argued that (1) the tax refunds claimed by Debtor were not part of his bankruptcy estate because none were actually due and, therefore, Debtor was not entitled to exempt them; (2) setoff under § 553 was appropriate because the tax refunds due Debtor were for prepetition periods and his tax liabilities were for prepetition periods; and (3) its right of setoff under IRC § 6402(a) constituted cause for relief from the automatic stay.[9] Debtor objected to the relief sought on the ground that his claimed exemption in the tax refunds was allowed under § 522 and CCP § 703.104(b)(5) and, therefore, his exemption rights were superior to the IRS's setoff rights.

After protracted briefing and hearings, the bankruptcy court issued a Memorandum Decision on March 31, 2008, denying the IRS's Motion. The decision was amended on June 13, 2008, and published, *In re Gould*, 389 B.R. 105. The court viewed the primary issue to be whether the IRS's setoff should be allowed against property that Debtor had already fully exempted without challenge by the IRS or any other party. *Id.* at 111.

The bankruptcy court concluded that the IRS's failure to object to Debtor's exemption in the tax refunds triggered the consequences of the Supreme Court's decision in *Taylor*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280, which held that a party is barred from contesting the validity of an exemption after the thirty-day deadline to object set forth in Rule 4003 expires, regardless of whether Debtor had a colorable statutory basis for claiming it. The bankruptcy court held that once the tax refunds were deemed exempt, they no longer were subject to setoff. Accordingly, the court denied the IRS's motion for relief from stay.

As an alternative reason for denying the IRS's motion, the bankruptcy court exercised its equitable discretion to disallow the IRS's setoff rights under § 553 even though the IRS had established that it had a right of setoff under IRC § 6402(a) and all the requirements under § 553 were met.[10] *Gould*, 389 B.R. at 127–29.

The order denying the IRS's Motion and requiring the IRS to promptly pay Debtor $6,852 was entered on April 16, 2008.

The IRS filed a Motion to Alter or Amend Judgment or, in the Alternative for Stay of Order ("Motion for Stay"), which became moot after the IRS mistakenly paid Debtor pursuant to the court's order.

The IRS timely appealed.

## II. JURISDICTION

The bankruptcy court had subject matter jurisdiction pursuant to 28 U.S.C. § 1334 over this core proceeding under § 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

A. Whether the bankruptcy court abused its discretion by denying the IRS's motion for relief from stay under § 362(d)(1) and (2).

B. Whether the bankruptcy court abused its discretion in disallowing the

---

9. However, throughout the briefing in this case, the IRS has argued, in the alternative, for relief from stay under either § 362(d)(1) or (2).

10. The court found the equities weighed in Debtor's favor as discussed *infra* in Section V(D).

IRS's setoff under § 553 based on the equities of the case.

## IV. STANDARDS OF REVIEW

■ The decision to deny a motion for relief from stay and disallow a setoff is reviewed for abuse of discretion. *Arkinson v. Frontier Asset Mgmt., LLC (In re Skagit Pac. Corp.)*, 316 B.R. 330, 335 (9th Cir. BAP 2004); *United States v. Carey (In re Wade Cook Fin. Corp.)*, 375 B.R. 580, 588 (9th Cir.BAP2007). "A bankruptcy court abuses its discretion if it bases its ruling on an erroneous view of the law." *Wade Cook*, 375 B.R. at 588.

■ We review the bankruptcy court's conclusions of law de novo, and factual findings for clear error. *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 32 (9th Cir. BAP 2008).

## V. DISCUSSION

### A. Mootness

We first consider Debtor's argument that this appeal is moot. Debtor maintains that he has "quite possibly" spent the tax refunds and, therefore, ordering him to return the funds to the IRS may be impossible. He further argues that ordering him to return the money would derail the completion of his chapter 13 plan.

■ Debtor, as the party advocating mootness, bears the heavy burden of establishing that we cannot provide any effective relief to the IRS. *Suter v. Goedert*, 504 F.3d 982, 986 (9th Cir.2007). Debtor has not met his burden here.

■■ Constitutional mootness derives from Article III of the United States Constitution, which provides that the exercise of judicial power depends on the existence of a case or controversy. *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974); *PW, LLC*, 391 B.R. at

33. The doctrine of constitutional mootness is essentially a recognition of Article III's prohibition against federal courts' issuing advisory opinions. *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). While the Article III mootness doctrine has a "flexible character," *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), it applies when events occur during the pendency of the appeal that make it impossible for the appellate court to grant effective relief. *See PW, LLC*, 391 B.R. at 33, *citing Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992). If no effective relief is possible, we must dismiss for lack of jurisdiction. *Church of Scientology*, 506 U.S. at 12, 113 S.Ct. 447.

■ A variation of the mootness rule, the equitable mootness doctrine, "applies when appellants 'have failed and neglected diligently to pursue their available remedies to obtain a stay' and circumstances have changed so as to 'render it inequitable to consider the merits of the appeal.'" *Darby v. Zimmerman (In re Popp)*, 323 B.R. 260, 271 (9th Cir. BAP 2005) (citation omitted). We conclude that neither the constitutional nor equitable mootness doctrines apply to this appeal.

■ The rule in the Ninth Circuit is that where the order appealed involves the distribution of money and the party who received the funds is a party to the appeal, the appeal is not moot because the appellate court has the power to fashion effective relief by ordering the party to return the money. *See Spirtos v. Moreno (In re Spirtos)*, 992 F.2d 1004, 1007 (9th Cir. 1993); *United States v. Arkison (In re Cascade Rds., Inc.)*, 34 F.3d 756, 760 (9th Cir.1994); *United States v. Valley Nat'l Bank (In re Decker)*, 199 B.R. 684, 687 (9th Cir. BAP 1996). Under this rule, we can implement effective relief because

Debtor is a party to the appeal, and we can order him to repay the money to the IRS upon reversal of the bankruptcy court's rulings.

Debtor maintains that he has "quite possibly" spent the money, thereby making effective relief impossible. Simply because Debtor may have a present inability to repay the government does not mean effective relief is unavailable. *See United States v. Campbell,* 2003 WL 23241957 (W.D.N.Y.2003) (finding that neither taxpayer's present inability to make restitution for an erroneously paid tax refund, nor mistake by the IRS in issuing an erroneous refund, excused taxpayer's legal obligation to repay amount of refund to the government). Therefore, the appeal is not constitutionally moot.

■ Further, although the IRS did not obtain a stay pending appeal, we perceive no reason to apply the equitable mootness doctrine and Debtor has not offered one. In response to our questions at oral argument in this appeal, we learned that the IRS had *mistakenly* refunded Debtor's tax overpayments to him while its Motion for Stay was pending. The IRS's mistaken payment explains why its Motion for Stay became moot and, therefore, the bankruptcy court never had an opportunity to rule on the IRS's request. We conclude that it is not inequitable to consider the merits of the appeal when the IRS's failure to obtain a stay was based on an administrative mistake.

We also cannot conceive how the money, which Debtor claims exempt, could derail the completion of his plan. Debtor committed excess income of $75 per month to fund his plan, and the record contains no evidence that the tax refunds were used toward any of his plan payments.

Put simply, Debtor erroneously received the overpayments from the IRS. Debtor was aware that the IRS appealed the bankruptcy court's decision and would seek to recover the money from him if successful on appeal. Debtor "quite possibly" spent the money. We conclude that it would not be unjust to require him to repay it.

We recognize that the Eighth Circuit BAP has decided differently the mootness issue presented here. *Internal Revenue Serv. v. Ealy (In re Ealy),* 396 B.R. 20 (8th Cir. BAP 2008). In *Ealy,* the IRS moved for relief from the automatic stay to permit offset of the debtor's postpetition tax overpayment and economic stimulus payment under the Economic Stimulus Act of 2008 against his postpetition tax liability. The bankruptcy court denied the IRS's motion, concluding that the IRS was adequately protected by the debtor's confirmed plan, which provided for periodic payments in full of the postpetition tax liability.

The IRS appealed and sought a stay of the order pending appeal from the bankruptcy court. The bankruptcy court denied its request. The IRS paid the tax overpayment and the stimulus payment to the debtor. The IRS appealed the bankruptcy court's order denying it relief from stay.

The Eighth Circuit BAP concluded that the IRS no longer had a right of setoff because the mutuality aspect of § 553 was lost because of the IRS's payment to the debtor. Therefore, the BAP held that even if it did reverse the bankruptcy court, it was impossible to grant the IRS effective relief since the IRS had sought relief from stay to effectuate its setoff rights.

■ We disagree with the Eighth Circuit BAP's decision in *Ealy* because it summarily ignores basic principles that underlie the doctrine of constitutional mootness. For example, there is no requirement that a court must return the parties

"to the *status quo ante.*" *Cascade Rds.*, 34 F.3d at 759. In the Ninth Circuit, the standard is that " 'an appeal is not moot if the court can fashion *some* form of meaningful relief.' " *Id.* (emphasis in original). Here, reversal of the bankruptcy court's order simply will require Debtor to pay the IRS back.

Further, to follow *Ealy's* holding would 'have the unwelcome effect of encouraging disobedience to a court's order if a stay could not be obtained, thus presenting the [IRS] with a choice of losing its right to appeal or noncompliance.' [This] result would contravene the fundamental principle that 'a debtor against whom a judgment for money is recovered may pay that judgment and bring a writ of error to reverse it.... [In so doing], the defendant has merely submitted to perform the judgment of the court and has not thereby lost [its] right to seek a reversal of that judgment by writ of error or appeal.'

*Cascade Rds.*, 34 F.3d at 760 (citations omitted). We conclude Ealy is unpersuasive and nonbinding.

Because the appeal is not moot, we consider the merits.

### B. The IRS's Setoff Rights Were Preserved Under § 553

 Setoff rights under the Bankruptcy Code are governed by § 553, which provides in relevant part that,

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

As this panel, and the bankruptcy court, recognize, § 553 does not establish independent setoff rights in bankruptcy but rather preserves setoff rights existing under law independent of the Bankruptcy Code. *Cascade Rds.*, 34 F.3d at 763; *see also Wade Cook,* 375 B.R. at 591.

 Setoff has venerable origins in Roman and common law, recognizing the principle that mutually offsetting debts between parties should be applied against each other to determine the balance owed. *See* Tigar, Michael E., *Automatic Extinction of Cross–Demands: Compensatio from Rome to California,* 53 Cal. L.Rev. 224 (1965). "Since that time, setoffs in bankruptcy have been 'generally favored,' and a presumption in favor of their enforcement exists." *Carolco Television, Inc. v. Nat'l Broad. Co. (In re De Laurentiis Entm't Group Inc.),* 963 F.2d 1269, 1277 (9th Cir.1992).

While setoff is by its nature equitable, setoff rights in many cases are governed by statute and are applied consistent with the governing statutory terms. *See, e.g.,* CCP § 431.70.[11]

11. CCP § 431.70 provides:

Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations. If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section shall not exceed the value of the relief granted to the other party. The defense provided by this section is not available if the cross-demand is barred for failure to assert it in a prior

■ The IRS's setoff rights arise under IRC § 6402(a), which provides that,

> In the case of any *overpayment,* the Secretary, within the applicable period of limitations, may credit the amount of such *overpayment,* including any interest allowed thereon, against any *liability in respect of an internal revenue tax* on the part of the person who made the *overpayment* and shall … *refund any balance* to such person. (Emphasis added.)

The statute allows the IRS to credit "overpayments" against liabilities for taxes before determining whether a taxpayer is entitled to a "refund." The IRS contends that the bankruptcy court did not recognize the legal distinction between an overpayment and a refund, which the IRS maintains contributed to the error in the court's decision. We agree. When Congress uses different words in a statute, " 'it usually means different things.' " *Shaw v. County of San Bernardino (In re Shaw),* 157 B.R. 151, 153 (9th Cir. BAP 1993) (citation omitted).[12]

The Fifth Circuit specifically recognized that difference between an "overpayment" and a "refund" in *Internal Revenue Service v. Luongo (In re Luongo),* 259 F.3d 323, 335 (5th Cir.2001), as follows:

> [U]nder 26 U.S.C. § 6402(a) the debtor is generally only entitled to a tax refund to the extent that her overpayment exceeds her unpaid tax liability.... In the present case, the estate had a tax liability totaling $3,800, while the 1997 overpayment totaled only $1,395.94. Section 6402(a) grants the IRS discretion whether to offset against a debtor's unpaid tax liability or to refund the overpayment to the taxpayer. The IRS elected to exercise that discretion to apply the overpayment to Appellant's past liability. Because the prior unpaid tax liability exceeded the amount of the overpayment, the debtor was not entitled to a refund and the tax refund did not become property of the estate. Absent an interest in the estate to the refund, it could not properly be exempted by the debtor under § 522.

Also, *see Pettibone Corp. v. United States,* 34 F.3d 536, 538 (7th Cir.1994):

> The Internal Revenue Code leaves to the Commissioner's discretion whether to apply overpayments to delinquencies or to refund them to the taxpayer. 26 U.S.C. § 6402(a). Until the Commissioner exercises this discretion, the taxpayer has no right to payment.

In *Lyle v. Santa Clara County Dept. of Child Support Servs. (In re Lyle),* 324 B.R. 128, 131 (Bankr.N.D.Cal.2005), the court observed:

> [T]he debtor's interest in a *refund* does not necessarily extend to the full value

---

action under Section 426.30. Neither person can be deprived of the benefits of this section by the assignment or death of the other. For the purposes of this section, a money judgment is a "demand for money" and, as applied to a money judgment, the demand is barred by the statute of limitations when enforcement of the judgment is barred under Chapter 3 (commencing with Section 683.010) of Division 1 of Title 9.

**12.** It is an elementary precept of statutory construction that the definition of a term in the definitional section of a statute controls the construction of that term wherever it ap-

pears throughout the statute. *See* 1A Sutherland, Sutherland on Statutory Construction § 20.08 at 88 (6th ed.2008). IRC § 6401(c) defines an "overpayment" negatively: "An amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid." Although IRC § 6401(c) does not define what constitutes a refund, several statutes throughout the IRC use the terms overpayment and refund. *See* §§ 6402(a), (d) and (e), 6511 and 6512(b).

of any *overpayment* of taxes in a given tax year. *[Luongo,* 259 F.3d at 335.] Rather, the express provisions of the Internal Revenue Code make it clear that the debtor's interest in a refund is contingent on the subsequent statutory determination of what portion of the overpayment, if any, the debtor is entitled to receive as a refund. *[In re Martin,* 167 B.R. 609, 612–13 (Bankr.D.Or. 1994).] (Emphasis in original).

The bankruptcy court recognized from "relevant caselaw" that the terms "tax overpayment" and "tax refund" are not interchangeable, but based on certain unexplained analytical assumptions, treated them as essentially fungible despite that recognition. *See Gould,* 389 B.R. at 108 n. 3. However, if the terms "overpayment" and "refund" in IRC § 6402(a) are treated as distinct, the record in this appeal appears in a very different light from the perception of the bankruptcy court.

Debtor had not filed his federal income tax returns for 1999 through 2004 when he filed his petition. His failure to file prompted the IRS to object to his plan on feasibility grounds. Debtor amended his Schedule C, claiming an exemption in "2002, 2003, 2004 Income Tax Refund[s]" even though Debtor had still not filed his federal income tax returns for 1999 to 2004. At that time, he had a contingent and unliquidated claim to a refund or refunds, and that claim was property of his bankruptcy estate, as recognized by the bankruptcy court. *See Gould,* 389 B.R. at

114; *Luongo,* 259 F.3d at 335; *Lyle,* 324 B.R. at 131.

The IRS did not object to Debtor's claimed exemption in the income tax refunds. Under IRC § 6402(a), if Debtor was entitled to a refund after his prepetition tax overpayments were applied against his unpaid prepetition income tax liabilities, the IRS arguably would have no basis to object to his exemption claim.

Debtor filed his federal income tax returns for 1999 to 2004 in June and July 2005. In his amended plan, Debtor committed excess disposable income of $75 a month for thirty-seven months to plan payments, but there was no provision for disposition of any tax refunds received by Debtor.

The IRS filed several amended proofs of claim. The IRS's Fourth Amended Claim included a secured setoff claim of $6,852, an unsecured priority claim of $307.51, and a general unsecured claim in the amount of $2,812.93, for a total claim of $9,972.44. The automatic stay, however, prevented the IRS from exercising its setoff rights. *See* § 362(a)(7)[13]; *see also Pieri v. Lysenko (In re Pieri),* 86 B.R. 208, 210 (9th Cir. BAP 1988) (noting that the automatic stay does not defeat the right of setoff, but merely stays its enforcement pending an orderly examination of the debtor's and creditor's rights).

Accordingly, the IRS filed its Motion seeking relief from stay on October 25, 2005.[14]

---

**13.** We observe that if this case had been filed under BAPCPA, the IRS would not have to seek relief from stay to set off Debtor's tax overpayments. BAPCPA includes § 362(b)(26) which expressly excepts the setoff of prepetition tax refunds from the automatic stay. Section 362(b)(26) states in pertinent part: "The filing of a petition under section 301, 302, or 303 of this title, ... does not operate as a stay—... under subsection (a), of the setoff under applicable nonbank-

ruptcy law of an income tax refund, by a governmental unit, with respect to a taxable period that ended before the date of the order for relief against an income tax liability for a taxable period that also ended before the date of the order for relief...."

**14.** The IRS's Motion was not decided until the court issued its published decision on June 13, 2008. Generally, the hearing on a motion for relief from stay is a summary

## C. The IRS's Motion for Relief from Stay

### 1. Section 362(d)(1): The IRS Established That Cause Existed for Granting Relief From Stay

 The IRS, as the party seeking relief, must first establish a prima facie case that cause exists for relief under § 362(d)(1). *Duvar Apt., Inc. v. FDIC (In re Duvar Apt., Inc.)*, 205 B.R. 196, 200 (9th Cir. BAP 1996). Once a prima facie case has been established, the burden shifts to Debtor to show that relief from the stay is not warranted. *See* § 362(g)(2) [15]; *Duvar Apt.*, 205 B.R. at 200.

 The IRS argues that its right of setoff under IRC § 6402 and § 553 constitutes "cause" for relief from stay under § 362(d)(1). "Courts generally recognize that, by establishing a right of setoff, the creditor has established a prima facie showing of 'cause' for relief from the automatic stay under § 362(d)(1)." *In re Ealy*, 392 B.R. 408, 414 (Bankr.E.D.Ark.2008) (citing cases).

 Here, it is undisputed that the IRS possessed a valid right of setoff under § 553(a) and the bankruptcy court so found. Therefore, we conclude that the IRS made a prima facie showing that cause existed for relief from stay, thereby shifting to Debtor the burden of proving that relief was inappropriate in this case.

Debtor's only defense was that his exemption in the anticipated tax refunds was superior to the IRS's setoff rights. However, the amount of any claimed refund could not even be determined under IRC § 6402(a) until the IRS had applied Debtor's prepetition tax overpayments to his unpaid prepetition tax liabilities. That was the precise reason the IRS sought relief from stay, and the bankruptcy court erred as a matter of law in denying the IRS relief from stay under § 362(d)(1) to allow that process to proceed.

The bankruptcy court's *Taylor* analysis is not relevant because Debtor's contingent and unliquidated claim to tax refunds clearly was property of his estate, and the IRS had no basis to object to the claimed exemption. Ultimately, based on the factual record before the bankruptcy court and application of § 6402(a), Debtor's prepetition unpaid tax liabilities exceeded his prepetition tax overpayments, and there was no refund to which Debtor's claimed exemption could attach. *See Luongo*, 259 F.3d at 335; *Lyle*, 324 B.R. at 131–33.

Moreover, the Supreme Court in *Taylor* did not discuss, let alone offer any rationale, for the bankruptcy court's conclusion that its holding operated to cut off a credi-

---

proceeding that requires the bankruptcy court's action to be quick and is limited to determining whether "the creditor has a colorable claim to the property of the estate." *Biggs v. Stovin (In re Luz Int'l, Ltd.)*, 219 B.R. 837, 842 (9th Cir. BAP 1998). Here, the hearing was hardly accelerated, and both parties were able to fully brief and argue the substantive merits of the IRS's right to setoff under § 553. The IRS and Debtor have also extensively asserted their relative positions on the substantive setoff within the context of this appeal. We thus consider the merits of both rulings made by the bankruptcy court—denial of the IRS's motion for stay relief under § 362(d)(1) and (2) and disallowance of

its setoff rights under § 553 on equitable grounds. *See United States v. Offord Fin., Inc. (In re Medina)*, 205 B.R. 216 (9th Cir. BAP 1996) (deciding setoff rights in the context of a motion to lift stay).

15. Section 362(g) provides: "In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section-(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and (2) the party opposing such relief has the burden of proof on all other issues."

tor's setoff rights, which are preserved in § 553. Notably, the Supreme Court was neither called upon to examine the plain language of § 553, nor did it discuss case law that analyzed the interplay between § 522(c) [16] and § 553.

While there was no conflict between § 553 and § 522(c) under this set of facts, if such a conflict did exist, our former decision in *Pieri*, 86 B.R. 208, would control.[17] *See California v. Rowley (In re Rowley)*, 208 B.R. 942, 944 (9th Cir. BAP 1997) (noting that the panel is bound by its former decisions). In *Pieri*, the panel reconciled the conflict between § 553 and § 522(c)—which bars exempt property from being liable for any debt, with certain enumerated exceptions, that arose before the beginning of the case. In construing the two statutes, the panel noted that "[i]t is long settled that where there is an irreconcilable conflict between different parts of the same act, the last in order of arrangement will control." *Pieri*, 86 B.R. at 212–13. The BAP held that "[§ ] 553 would control over [§ ] 522(c) on any point of conflict." *Id.*

The Ninth Circuit's reasoning in *De Laurentiis*, 963 F.2d 1269, also provides support for deciding that § 553 trumps § 522(c). In *De Laurentiis*, the Ninth Circuit considered the conflict between § 553 and § 1141 [18] and found that § 553

controlled. In reaching its conclusion, the court relied on the language and structure of § 553 and the policies that underlie it. *Id.* at 1276.

Section 553 provides that, with listed exceptions not relevant here, "this title does not affect the right of any creditor to offset a mutual debt. . . ." The Ninth Circuit found that this language established a right to setoffs in bankruptcy and manifested a Congressional intent that it control "*notwithstanding any other provision of the Bankruptcy Code.*" (Emphasis added.) *Id.* at 1276–77.

The Ninth Circuit also found that a contrary conclusion would essentially nullify § 553, because § 553 does not create the right of setoff, but merely preserves it. The court opined that if § 1141 were given precedence over § 553, then setoffs would be allowed under Chapter 11 only where they were written into a plan of reorganization. *Id.* at 1277.

Finally, the Ninth Circuit acknowledged the long history of setoffs in both the nonbankruptcy and bankruptcy contexts. The court found no indication, from § 553 or elsewhere, of an intent to deviate from this historical precedent of recognizing setoff rights. *Id.*

Following the analysis in *De Laurentiis*, we reach the same conclusion that our

---

**16.** Section 522(c) provides: "Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case. . . ."

**17.** In *Pieri*, the BAP affirmed the right of the landlord to set off her claims for damage to leased premises against the debtors' cause of action against the landlord arising out of the same circumstances, even though debtors claimed the cause of action as exempt property in their respective bankruptcy cases.

**18.** Section 1141, titled "Effect of confirmation", provides in subsection (a): "Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan."

former panel did in *Pieri*, albeit using a different vein of statutory construction. We conclude that the plain language of § 553 provides the answer to what the bankruptcy court viewed as the primary question before it: whether the IRS's set-off should be allowed against property that Debtor had already fully exempted without challenge by the IRS or any other party. *Gould*, 389 B.R. at 111. Section 553(a), applied by its terms, dictates that the IRS's right to offset a mutual debt is not affected by any other section of the Code (with certain exceptions not relevant here). *United States v. Ron Pair Enters. Inc.*, 489 U.S. 235, 241–42, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (as with all issues of statutory interpretation, we begin with the words of the statute; if it is clear, we must apply it by its terms unless to do so would lead to absurd results). We conclude that to give Debtor's exemption in his claim to the tax refunds precedence over § 553 would be to ignore the plain language of § 553.

Moreover, under these circumstances the rule adopted by the bankruptcy court recognizing allowed exemptions as being superior to a creditor's setoff rights under nonbankruptcy law puts creditors in a position of having to object to a debtor's exemptions to preserve their setoff rights already provided for in § 553. This approach would result in needless objections to exemptions and would render § 553 largely meaningless.

Finally, we discern no policy arguments that would induce us to deviate from the presumption in favor of setoffs under this set of facts.

Therefore, we reinforce our previous holding in *Pieri* that § 553 controls over § 522(c). We conclude that the bankruptcy court abused its discretion in denying the IRS relief from stay under § 362(d)(1) by basing its ruling on the holding in

*Taylor*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280.

**2. Section 362(d)(2)**

Under § 362(d)(2), the court must grant relief from stay against property if Debtor does not have equity in the property and it is not necessary to an effective reorganization. The IRS has the burden of proof on the issue of Debtor's equity in the property. *See* § 362(g).

The bankruptcy court did not directly address whether the IRS had established that Debtor had no equity in his claimed tax refunds. If such a showing were made, the burden would shift to Debtor to establish that the claimed tax refunds were necessary for an effective reorganization of his affairs in chapter 13. Consistent with the Fourth Amended Claim and the parties' agreement in arguing the Motion, the amount of Debtor's prepetition overpayments totaled $6,852.00. In the Fourth Amended Claim, the IRS claimed unpaid prepetition tax liabilities totaling $9,972.44. Applying Debtor's prepetition tax overpayments to his prepetition unpaid tax liabilities leaves a balance of unpaid tax liabilities of $3,120.44. Accordingly, if the IRS in its discretion under IRC § 6402(a) applied Debtor's tax overpayments to his unpaid liabilities, there is no equity for Debtor, and further, there is no refund to which Debtor's claimed exemption could attach. *See Luongo*, 259 F.3d at 335; *Lyle*, 324 B.R. at 131–33.

Debtor presented no evidence that the tax refunds in which he claimed an exemption were necessary to an effective reorganization in chapter 13. In fact, his confirmed plan provided for payments only from excess disposable income and did not specify how any tax refunds recovered for prepetition periods were to be spent. On this record, the bankruptcy court erred as

a matter of law in denying the IRS relief from stay under § 362(d)(2).

### D. The Bankruptcy Court's Alternative Holding: Disallowance of the IRS's Setoff Rights on Equitable Grounds

 Allowance of setoff rights under § 553 is permissive, not mandatory. *Cascade Rds.*, 34 F.3d at 763 (noting that the allowance of setoff rights is discretionary)[19]; *FDIC v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 701 F.2d 831, 836–37 (9th Cir.1983) (denying the bank's claim of setoff against the debtors' bank deposits on public policy grounds). However, we have previously observed that "the setoff right is an established part of our bankruptcy laws [and] should be enforced 'unless compelling circumstances' require otherwise." *Camelback Hosp., Inc. v. Buckenmaier (In re Buckenmaier)*, 127 B.R. 233, 237 (9th Cir. BAP 1991) (citation omitted).

 Against this background, we consider whether the bankruptcy court's decision to disallow the IRS's setoff right on equitable grounds was an abuse of its discretion. We cannot reverse on this ground unless we have a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached after weighing the relevant factors. *Cashco Fin. Servs., Inc. v. McGee (In re McGee)*, 359 B.R. 764, 769–70 (9th Cir. BAP 2006). However, a bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings. *Id.*

In finding that the equities weighed in Debtor's favor, the court considered the following factors: (1) the IRS did not object to Debtor's exemption in the tax refunds; (2) the IRS did not ask for an extension of time to object, under Rule 4003(b); (3) the IRS's rights under IRC § 6402(a) "were just the same as any other creditor's setoff rights . . . ."; (4) the IRS's discretionary right of setoff was not timely exercised because it did not move for relief from stay until several months after Debtor claimed his exemption;[20] and (5) Debtor's financial position weighed heavily in favor of denying the IRS's claim of setoff.

With respect to the last factor, the court observed that Debtor had absolutely nothing else but the tax refunds in question to provide him with the "basic necessities of life." The court concluded that allowing the IRS to set off the tax refunds would take from Debtor his wildcard exemption, which was the most "important exemption available to him as a nonhomeowner" and contrary to "bankruptcy policy and California state exemption policy." *Gould*, 389 B.R. at 129.

The bankruptcy court relied heavily for its equitable determination on the fact that the IRS did not object to Debtor's claimed exemption in the tax refunds and waited several months before filing the Motion. As explained above, the IRS had no basis to object to Debtor's exemption because his contingent and unliquidated claim to the tax refund clearly was property of his estate. Moreover, applying IRC § 6402(a) shows that there was no refund to which Debtor's claimed exemption could attach

---

**19.** In *Cascade Rds.*, the bankruptcy court's decision denying setoff was affirmed based on the fact that the case was replete with inequitable conduct on the part of the party seeking setoff. *Id.* at 762.

**20.** We observe that § 553 does not contain a time limitation by which the IRS must move

for relief from stay to accomplish its setoff rights. According to the record, Debtor claimed his exemption in the tax refunds before he had filed the returns for the years he sought the refunds. *Gould*, 389 B.R. at 109. Thus, it was not surprising that the IRS waited to file its motion for stay relief.

because his prepetition unpaid tax liabilities exceeded his prepetition tax overpayments. Accordingly, there are no tax refunds in which the bankruptcy estate had a property interest. *Luongo*, 259 F.3d at 335; *Lyle*, 324 B.R. at 131–33.

The bankruptcy court also treated the IRS's setoff rights as analogous to setoff rights available to other creditors. However, the IRS's setoff rights are specified by IRC § 6402(a) and must be applied according to its terms. Being based on statute, the IRS's setoff rights are not "just the same as any other creditor's setoff rights." The bankruptcy court's decision disregarded the distinct terms under which the IRS can exercise a setoff, and that lapse alone constitutes an abuse of discretion.

The bankruptcy court also based its equitable determination on Debtor's having absolutely nothing else but the tax refunds in question to provide him with the "basic necessities of life."[21] *Gould*, 389 B.R. at 129. The bankruptcy court concluded that allowing the IRS to set off the tax refunds would take from Debtor his wildcard exemption, which was the most "important exemption available to him as a nonhomeowner" and contrary to "bankruptcy policy and California state exemption policy." *Gould*, 389 B.R. at 129.

The last equitable factor weighed by the bankruptcy court implicates important public policies behind bankruptcy and California exemption laws. In *Pieri*, the panel recognized that exemption statutes are to be given a liberal construction and that "[t]his liberal view will be maintained in state policy governing the use of setoff against exempt property." 86 B.R. at 213.

Thus, while the *Pieri* panel held that § 553 would control over § 522(c), we acknowledge that it did not foreclose a bankruptcy court from considering whether any state policy of protecting the rights of a debtor is present in the case.

Nevertheless, we question whether California exemption policy holds any weight under these circumstances when a federal statute such as IRC § 6402 controls the IRS's setoff rights. In *Pieri*, the right of setoff was authorized under California law based on equitable principles. Here, the IRS's right of setoff is not based on equitable principles but on IRC § 6402, which is a federal statute that does not recognize state exemptions. *See In re Bourne*, 262 B.R. 745, 749–50 (Bankr.E.D.Tenn.2001). Arguably, the Supremacy Clause of the United States Constitution prevents state exemption laws from defeating federal setoff rights provided under IRC § 6402. *Id.*

However, even if a consideration of state exemption policy could override the IRS's setoff rights preserved in § 553, the circumstances in *Pieri* are distinguishable from those in this case. California courts have disallowed a setoff against exempt property that provides income necessary to pay daily living expenses. *Kruger v. Wells Fargo Bank*, 11 Cal.3d 352, 113 Cal. Rptr. 449, 521 P.2d 441 (1974) (disallowing setoff against the debtor's bank account, which contained unemployment compensation and disability benefits); *Barnhill v. Robert Saunders & Co.*, 125 Cal.App.3d 1, 177 Cal.Rptr. 803 (Cal.Ct.App.1981) (preventing an employer from setting off debts owed to it by an employee's exempt wages owed to him). In each case, state policies protecting the debtor's interest apparently

---

**21.** There was no evidence in the record that Debtor needed the tax refunds to provide him with the basic necessities of life. The only offer of proof was that Debtor was a single father with teenage children and, therefore,

needed the money. Moreover, Debtor was funding his plan with excess income of $75 a month, which directly conflicts with the bankruptcy court's finding.

outweighed the creditor's right to setoff. The record in this appeal does not support Debtor's claim of exemption to provide a source of income to pay his daily living expenses. Debtor's confirmed chapter 13 plan provides for payments of $75 disposable income in excess of expenses during each month of the term of the plan.

Finally, the Ninth Circuit in *De Laurentiis* discussed the equities in favor of setoff. The court noted that the defense of setoff allows the creditor to claim an amount large enough to set off its debt. *De Laurentiis*, 963 F.2d at 1277. Absent such a right, it would have to pay its debt in full, yet receive pennies on the dollar. The court observed that this result was unfair, which was why setoffs "were allowed in bankruptcy in the first place." *Id.*

We recognize the unfairness that would result from barring a setoff in the case before us. The IRS initially objected to Debtor's plan on the ground that he had unpaid tax liabilities for the very years he claimed refunds. The IRS asserted its setoff rights during the pendency of the bankruptcy proceeding by filing a motion for relief from stay and a proof of claim, a portion of which was based on its setoff rights. Therefore, Debtor was on notice that the IRS would seek to set off his overpayments against his liabilities.

The record reflects that as a matter of procedure, the IRS played by the rules. It did not attempt to offset Debtor's tax overpayments against his tax liabilities in the absence of relief from stay. After Debtor filed his tax returns for 1999 to 2004, the IRS filed the Motion to obtain that relief. The bankruptcy court denied the Motion, and the IRS turned over the $6,852.00 in tax overpayments to Debtor pursuant to the bankruptcy court's order before there was a formal application of the overpayments to determine if Debtor even was entitled to a refund. Under these circumstances, as a matter of equity, we do not see any factors weighing in Debtor's favor based on the IRS's conduct in this matter.

Accordingly, we conclude that the court abused its discretion in disallowing the IRS's setoff rights under § 553 on equitable grounds.

## VI. CONCLUSION

We REVERSE the bankruptcy court's denial of the IRS's motion for relief from stay for the reasons set forth above and REMAND for entry of an order consistent with this opinion.