In re Rosemary K. SISSINE, Debtor.

Neil C. Gordon, Trustee for the Estate of Rosemary K. Sissine, Plaintiff,

v.

United States of America and Georgia Department of Revenue, Defendants.

Bankruptcy No. 04–65718–MGD.

Adversary No. 09–06091–MGD.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

May 27, 2010.

Rosemary K. Sissine, pro se.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

MARY GRACE DIEHL, Bankruptcy Judge.

This matter is before the Court on cross motions for summary judgment.[1] (Docket Nos. 33, 36 & 37). The Chapter 7 Trustee ("Trustee") commenced this adversary proceeding on February 17, 2009, against Georgia Department of Revenue ("GDOR") and United States of America ("U.S." or "IRS") (collectively, "Defendants").[2] Trustee asserts six claims against Defendants. Count I alleges a willful violation of the automatic stay under 11 U.S.C. § 362(h)(1).[3] (Second Amended Complaint ("SAC") ¶¶ 19–23). Count II alleges that self-executing tax liens asserted against Debtor's estate are subordinated to outstanding administrative expenses under 11 U.S.C. § 724(b). (SAC ¶¶ 24–33). Counts III and IV seek avoidance and recovery of alleged postpetition transfers of property of the estate pursuant to 11 U.S.C. §§ 549 and 550. (SAC ¶¶ 34–42). Count V seeks immediate turnover to Trustee of claimed tax refunds or the value thereof. (SAC ¶¶ 43–46). Count VI asserts a monies had and received claim. (SAC ¶¶ 47–52).

GDOR moved to dismiss or for judgment on the pleadings with respect to Counts II through IV on August 14, 2009.[4]

---

1. Defendant Georgia Department of Revenue also moved for judgment on the pleadings or, alternatively, to dismiss but addressed all claims asserted by Trustee in its Motion for Summary Judgment. (Docket No. 33).

2. Trustee filed a second amended complaint on June 30, 2009, properly naming the United States of America, instead of the United States Department of Treasury, as a defendant. (Docket No. 18).

3. Section 362(h)(1) is the applicable law for this adversary proceeding. The underlying bankruptcy case was filed April 5, 2004 prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Section 362(k)(1) is the current provision pertaining to willful stay violations.

4. Trustee filed a Response and GDOR filed a Reply. (Docket Nos. 38 & 44). Trustee's response dismissed its Count V turnover action against GDOR with respect to the 2001 tax refund. (Docket No. 44 n. 1).

(Docket No. 32). On August 28, 2009, GDOR moved for summary judgment on all Counts. (Docket No. 33). On August 31, 2009, the U.S. and Trustee moved for summary judgment.[5] (Docket Nos. 36 & 37). On February 17, 2010, the Court issued a notice of hearing for oral arguments to be held on the motions for summary judgement.[6] (Docket No. 58).

This is a core proceeding under 28 U.S.C. § 157(b)(2) and jurisdiction and venue are proper. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is denied, and GDOR's Motions for Summary Judgment is granted. U.S.'s Motion for Summary Judgment is granted as to Counts I through V, and Count VI is dismissed for lack of jurisdiction.

In accordance with Rule 56 of the Federal Rules of Civil Procedure, applicable to this Court pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Material facts" are those which might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, a dispute of fact is genuine "if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Lastly, the moving party has the burden of establishing the right of summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir.1982). Where the nonmoving party bears the burden of proof at trial, the burden can be satisfied if the moving party demonstrates the absence of evidence supporting the nonmoving party's case. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir.2004). In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484 (11th Cir.1985). It remains the burden of the moving party to establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The material facts are undisputed; therefore, summary judgment is appropriate.

## I. STATEMENT OF FACTS

This adversary proceeding involves tax returns filed postpetition by Rosemary Sissine ("Debtor") and her non-debtor spouse, James Sissine, for the prepetition tax years of 2001, 2002, and 2003. In each

---

**5.** GDOR and U.S. filed Responses and Trustee filed Replies. (Docket Nos. 45, 47, 54, 55 & 56). Trustee filed a Response to U.S.'s Motion for Summary Judgment and U.S. filed a Reply. (Docket Nos. 53 & 57). U.S. sought dismissal of Counts II and VI. (Docket No. 36).

**6.** The order and notice of hearing set forth the following four issues: First, whether there a meaningful distinction between a tax overpayment and refund, and at what point Debtor's

legal or equitable interest in such funds arise. Second, what the origination and operation of the tax lien assumed by the Trustee is, and the Trustee's proposed liquidation and distribution plan pursuant to § 724(b). Third, whether the Trustee's May 5, 2006 letter imposed any affirmative duties on Georgia Department of Revenue. Fourth, from whom may the Trustee recover funds pursuant to § 362(h)(1) (2005), § 105, and § 542.

of those prepetition years, it was ultimately determined that withholdings by Debtor and Mr. Sissine exceeded their collective income tax liability imposed by the Internal Revenue Code and Georgia Public Revenue Code. On April 5, 2004, Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Her case was converted to a case under Chapter 7 of the Bankruptcy Code on April 26, 2005. (Case No. 04–65718). Prior to filing for bankruptcy, Debtor and Mr. Sissine had outstanding federal tax liabilities, resulting from their ownership positions with Portfolio Homes International, Inc., which had failed to pay employment taxes. (IRS Statement of Facts ("SOF") ¶ 2).

At the time of Debtor's Chapter 11 petition, Debtor and Mr. Sissine had not filed personal tax returns for 2001, 2002, and 2003. (Trustee SOF ¶ 5). The Sissines filed their 2001 return prior to the conversion of Debtor's bankruptcy case to Chapter 7. After his appointment, Trustee directed Debtor to file the past due tax returns before the expiration of the applicable statute of limitation. (Trustee SOF ¶ 5). Debtor complied, subsequently filing joint tax returns on April 14, 2006 for 2002 and April 15, 2007 for 2003.

## A. Georgia Department of Revenue.

Defendant GDOR did not receive any notices of Debtor's Chapter 11 case or of the conversion to Chapter 7 because it was not a named creditor in the bankruptcy case and was not included on the creditor matrix. GDOR did not file a proof of claim. (Case No. 04–65718, Docket No. 1; GDOR SOF ¶¶ 8–10).

On or about April 14, 2005, Debtor and Mr. Sissine filed a joint income tax return for the 2001 tax year. (Trustee's SOF ¶ 6). On July 13, 2005, GDOR issued a 2001 tax refund check in the amount of $10,489.00 made payable to Debtor and non-debtor spouse. (GDOR SOF ¶¶ 1 & 2).

On or about April 14, 2006, Debtor and Mr. Sissine filed a joint income tax return for the 2002 tax year. (Complaint ¶ 12).

On May 5, 2006, Trustee sent a letter to "Bo Fears, Esquire" at the "Georgia Department of Law" concerning Debtor's state tax refunds. (Trustee SOF ¶ 12; Docket No. 37, Exh. F). Neither Mr. Fears nor any other attorney at the Georgia Department of Law had appeared in any capacity in Debtor's bankruptcy case. Trustee's May 5, 2006 letter stated that 84.21% of the 2002 refund was property of the estate, and, based on negotiations with Debtor, "the entire $10,766 refund amount needs to end up in the bankruptcy Estate." (Docket No. 37, Exh. F). The letter closed by stating, "Please do what you can to have Georgia Revenue pay the entire return to the Bankruptcy Trustee." (Docket No. 37, Exh. F).

On July 27, 2006, GDOR issued a 2002 tax refund in the total amount of $10,766.00 made payable to Debtor and her Mr. Sissine. (GDOR SOF ¶¶ 3 & 4). At the request of the IRS, $6,868.16 of the 2002 tax refund was turned over to the IRS and $3,897.84 was refunded to Debtor and Mr. Sissine. (GDOR SOF ¶ 4). Debtor and Mr. Sissine received the $3,897.84 directly. At the oral argument hearing on March 4, 2010, U.S. announced that it would deliver the $6,868.16 it received from the 2002 state refund to the Trustee.

On April 15, 2007, the Sissines filed a joint personal income tax return for the 2003 tax year, claiming a state income tax refund in the amount of $10,536.40. (Trustee SOF ¶ 20). On January 17, 2008, GDOR issued the 2003 state tax refund in the amount of $10,536.40 payable to Debtor and Mr. Sissine. (GDOR SOF ¶¶ 5 &

6). Debtor and Mr. Sissine received the refund directly.

### B. United States of America/Internal Revenue Service

On or about April 14, 2005, Debtor and Mr. Sissine filed a joint income tax return for the 2001 tax year, claiming a federal refund in the amount of $44,996.57. (Trustee SOF ¶ 6). On May 5, 2005, IRS filed a proof of claim alleging an unsecured priority claim in the amount of $84,244.40 related to unpaid federal personal income taxes for tax years 2001–2004. (Trustee SOF ¶ 7; Claim No. 55). On June 6, 2005, Neil C. Gordon, who was initially appointed as Interim Trustee, became the permanent Trustee following the conclusion of the meeting of creditors. (Trustee SOF ¶ 2).

On July 15, 2005, IRS Insolvency Specialist Deborah Fowler decided that additional examination of the 2001 return was needed to determine whether the return was accurate. (IRS SOF ¶ 6). On July 19, 2005, Fowler sent a memo to Jackie Lynch referring the 2001 return for examination. That examination, however, never took place, and on September 27, 2005, Fowler was informed that her referral would not be accepted due to a lack of staffing. Consequently, Fowler issued a refund in the amount of $43,619.00, plus interest, to Trustee sometime between September 30, 2005 and October 18, 2005. (Trustee SOF ¶ 6; IRS SOF ¶ 7).

On March 23, 2006, Trust Fund Recovery Penalty ("TFRP") liabilities of $145,084.42 were assessed against Debtor and Mr. Sissine, pursuant to 26 U.S.C. § 6672, for allegedly willfully failing to collect, account for, and pay over the trust fund portion of the federal employment taxes of Portfolio Homes, LLC. (IRS SOF ¶ 8; Trustee SOF ¶ 8). These liabilities were for the tax periods ending September 30, 2002, December 31, 2002, March 31, 2003, June 30, 2003, and September 30, 2003.[7] (Trustee SOF ¶ 8). At the time IRS assessed the TFRP liabilities against Debtor and Mr. Sissine, the IRS had knowledge of Debtor's bankruptcy filing. (Trustee SOF ¶ 9).

On or about April 14, 2006, Debtor and Mr. Sissine filed a joint income tax return for the 2002 tax year, claiming a refund in the amount of $41,519.00. (Complaint ¶ 12). The 2002 return was filed under Mr. Sissine's social security number. (IRS SOF ¶ 9). The IRS's systemic freeze was not activated since Debtor's social security was not used to file the return. (IRS SOF ¶ 10).

On July 3, 2006, the IRS offset the 2002 refund against the TFRP liabilities for periods ending September 30, 2002 and December 31, 2002. (Trustee SOF ¶ 14). In addition, the IRS also applied the 2002 Georgia tax refund in the amount of $6,868.16 against the TFRP liabilities. (Trustee SOF ¶ 10).

On August 23, 2006, IRS Insolvency Specialist Fowler received a letter from Spence Shumway, accountant for Trustee. (IRS SOF ¶ 11). Mr. Shumway requested that the 2002 claimed refund be refunded to the Trustee. (IRS SOF ¶ 11). Because Fowler was uncertain of whether any refund was due to be issued to Trustee, Fowler assigned the matter to IRS Insolvency Specialist Regina Solomon to investigate whether turnover of the claimed

---

7. Portfolio Homes International, Inc.'s unpaid employment taxes were assessed as follows:

| Tax Period Ending | Amount |
| --- | --- |
| 9/30/2002 | $15,000.70 |
| 12/31/2002 | $42,073.74 |
| 03/31/2003 | $33,091.88 |
| 06/30/2003 | $28,611.30 |
| 09/30/2003 | $26,306.80 |

2002 tax refund was justified. (IRS SOF ¶ 11).

Also on August 23, 2006, IRS Insolvency Specialist Solomon prepared the paperwork to reverse the automated application of claimed refunds against the TFRP liabilities, pending a determination of whether any refund was due to Trustee. (IRS SOF ¶ 12). Solomon found that additional examination of the 2002 return was needed to determine whether Debtor and Mr. Sissine were owed any refund for 2002. (IRS SOF ¶ 13). On September 18, 2006, IRS reversed the automated application of the 2002 claimed refunds against Debtor's TFRP liabilities. (Trustee SOF ¶ 16). On October 25, 2006, Solomon forwarded some of her findings concerning the 2002 return to Vivian Dunn, IRS Fraud Coordinator. On October 27, 2006, Jerrold Frink, Revenue Agent, informed Solomon that they wanted examine the 2002 return. (Trustee SOF ¶ 17).

Simultaneous with the request for fraud review, IRS Insolvency Specialist Solomon requested that the Office of the Chief Counsel of the Internal Revenue Service seek permission to lift the automatic stay to permit the 2002 claimed tax refunds to be credited against the outstanding liabilities. (IRS SOF ¶ 17). Chief Counsel's office subsequently asked IRS Insolvency Specialist Solomon for additional information concerning this request, which she provided on December 6, 2006 and May 24, 2007. (IRS SOF ¶ 17). No relief from stay motion was ever filed by IRS.

On April 15, 2007, Debtor and Mr. Sissine filed a joint personal income tax return for the 2003 tax year, claiming a federal income tax refund in the amount of $39,955.00. (Trustee SOF ¶ 20). Although this return "posted" during the week of June 4, 2007, the IRS's automated freeze was triggered by Debtor's social security number and prevented the claimed refund from being issued. The 2003 return was held for further review. (Trustee SOF ¶ 21).

On June 8, 2007, IRS Specialist Karen Miller was assigned to Debtor's bankruptcy case. On June 14, 2007, Miller reviewed the case and contacted Chief Counsel's office to receive an update on the status of IRS Insolvency Specialist Solomon's request that a motion for relief from the automatic stay be filed. (Trustee SOF ¶ 22). As of June 28, 2007, the date of Debtor's discharge, IRS Specialist Miller had not received any information from Chief Counsel's Office concerning the status of that request. (IRS SOF ¶ 19). Also, IRS Insolvency Specialist Solomon had not received any information from IRS Fraud Coordinator Dunn or Agent Frink concerning the status of that fraud review. (IRS SOF ¶ 16).

On June 28, 2007, Debtor received a Chapter 7 discharge. (Trustee SOF ¶ 23). On June 29, 2007, the IRS received electronic notification of Debtor's discharge. (Trustee SOF ¶ 24). After consultation with Chief Counsel's Office on July 6, 2007, IRS Specialist Miller determined that any pending claimed refunds could be applied to the outstanding liabilities. (Trustee SOF ¶ 26).

During the week of July 22, 2007, or on July 30, 2007, the reversal of the litigation freeze code on the 2002 return was completed and the 2002 claimed refund was applied to TFRP liabilities for periods ending September 30, 2002 and December 31, 2002 and joint personal income tax liability for 2004. (IRS SOF ¶ 21).

Between August 26, 2007 and September 23, 2007, review of the 2003 income tax return was completed and Debtor's 2003 refund was applied to TFRP liabilities for periods ending December 31, 2002 and

March 31, 2003. (IRS SOF ¶¶ 22, 24 & 27).

At the time Trustee filed the Complaint in this Adversary Proceeding, the unpaid Chapter 11 administrative expenses, representing fee awards by the Court to various professionals, and the Chapter 7 administrative expenses incurred in the administration of the estate totaled over $450,000.00, and recoveries by the Trustee totaled $129,000.00. (Trustee SOF ¶ 30). The Estate has additional remaining assets of less than $20,000 and is administratively insolvent with respect to Chapter 11 administrative expenses. (Trustee SOF ¶ 31).

## II. CONCLUSIONS OF LAW

Defendants assert different legal theories in their Motions. Trustee's action against GDOR will be considered first.

### A. Georgia Department of Revenue

GDOR's Motion to Dismiss and Motion for Summary Judgment rely on the same legal basis for Counts II, III, and IV. These counts by Trustee all relate to postpetition acts by Defendants under 26 U.S.C. § 6672 of the Internal Revenue Code. GDOR asserts in its Motion to Dismiss and Motion for Summary Judgment that it solely acts in accordance with the Georgia Public Revenue Code as directed by the State Revenue Commissioner. O.C.G.A. § 48–2–1. Trustee seems to concede that Counts II, III, and IV are not relevant to GDOR, but no direct dismissal is on the record. Instead, Trustee's Response to GDOR's Motion for Summary Judgment does not address Counts II, III, and IV, and, therefore, those Counts will be treated as unopposed. Because Trustee's claims for Counts II, III, and IV rely on acts pursuant to 26 U.S.C. § 6672 of the Internal Revenue Code and GDOR is limited in its actions by the Georgia Public Revenue Code, Trustee is not entitled to judgment as a matter of law on these Counts. The uncontested material facts with respect to Counts II, III, and IV entitle GDOR to judgment in its favor.

The remaining Counts against GDOR include a stay violation claim (Count I), turnover claim (Count V), and money had and received (Count VI). At the March 4, 2010 oral argument hearing, Trustee withdrew its willful stay violation claim, Count I. With respect to Trustee's turnover claim, Trustee dismissed the turnover action with respect to the 2001 refund in its Response to GDOR's Motion for Summary Judgment. (Docket No. 44, n. 1). Also at the March 4, 2010 hearing, IRS announced that it would turnover the monies it requested from GDOR on the 2002 refund to Trustee. Trustee also dismissed Count VI in its responsive brief to GDOR's Motion for Summary Judgment. (Docket No. 44, n. 1).

The only legal issue for the Court to determine is, therefore, limited to Trustee's turnover claim for the 2002 refund in the amount of $3,897.84 and $10,563.40 for the 2003 refund. These sums were paid by GDOR to the Sissines.

Section 542(a) provides that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use sell, or lease ... shall deliver to the trustee ... such property or the value of such property...." 11 U.S.C. § 542(a). Section 542(a)'s requirement is self-executing and no demand by a trustee is required. *E.g., Turner v. DeKalb Bank (In re Turner),* 209 B.R. 558, 571 n. 7 (Bankr.N.D.Ala. 1997) ("It is widely recognized that the Code implies an affirmative duty to voluntarily return property repossessed pre-petition without forcing the debtor to file a turnover action at all.") (citations omitted). Section 542(c) provides an exception to

§ 542(a) when an entity has no actual notice or actual knowledge of the bankruptcy and a transfer of property was made in good faith. 11 U.S.C. § 542(c); *Jones v. Harrell,* 858 F.2d 667, 669–70 (11th Cir. 1988) (determining that a person without knowledge of bankruptcy proceedings will not forfeit payments made toward a debt owing to the debtor merely because payments were made to the debtor instead of trustee).

The parties agree that GDOR was not listed as a creditor in Debtor's bankruptcy case. GDOR was not scheduled by Debtor. GDOR was not included on the creditor matrix and did not file a proof of claim. Trustee asserts that its May 5, 2006 letter provided sufficient notice to GDOR to impose the turnover obligation. Trustee argues that its demand letter on an attorney at the Georgia Department of Law is sufficient to impute notice from GDOR's agent, the Attorney General's Office, to GDOR. Trustee equates notice to the Georgia Department of Law by its May 5, 2006 letter as notice to GDOR. In support its imputed notice theory, Trustee relies upon caselaw that holds notice to a creditor's attorney to be sufficient to impute notice or knowledge of the bankruptcy. *E.g., Beaman v. Vandeventer Black, LLP (In re Shearin),* 224 F.3d 353, 357 (4th Cir.2000) (relying on letters between the Trustee and law firm, trial testimony, and exhibits to find that the firm knew of the bankruptcy and the interest Trustee sought to protect). The *Shearin* case, however, involves the law firm itself as the target of the turnover action. *Id.* at 354. Therefore, its facts are not similar to this case.

GDOR disputes the legal effect of Trustee's May 5, 2006 letter. GDOR submits that the record fails to establish that it had any notice or knowledge of the bankruptcy and, therefore, cannot have any turnover liability. GDOR posits that Trustee's letter to an attorney in the Georgia Department of Law would, at best, provide notice to a separate entity and cannot be imputed to GDOR. According to GDOR, it is protected by § 542(c)'s good faith defense. GDOR states that Trustee's general proposition that service on the Attorney General equates to proper notice for other state agencies and entities is flawed. GDOR points out that complaints filed against the state under the Georgia Tort Claims Act, habeas corpus petitions, and complaints alleging that a statute is unconstitutional specifically require service on the state Attorney General. O.C.G.A. §§ 50–21–35, 9–14–15 & 9–4–7. Other types of suits do not contain a statutory mandate to serve the Attorney General. GDOR asserts that notice in this case would require service on the State Revenue Commissioner, in accordance with Georgia's general statutory service provision requiring service on a "chief executive officer or clerk thereof." FED. R. BANKR. P. 7004(b)(6); O.C.G.A. § 9–11–4(e)(5).

The Court agrees with GDOR that the letter to an individual attorney within the Georgia Department of Law is insufficient to establish actual notice to GDOR of Debtor's bankruptcy. GDOR is a separate entity from the Department of Law. The record does not establish that GDOR had actual notice or actual knowledge of the bankruptcy. The cases cited by Trustee that equate an attorney at the Georgia Department of Law with a creditor's attorney of record are inapplicable to the particular facts of this case. The majority of caselaw relied upon by Trustee assesses knowledge of the bankruptcy within the context of alleged stay violations. Trustee's case support also presents an enhanced record or pattern of behavior between the parties to support the court's finding of imputed knowledge. *Bryan v. Land (In re Land),* 215 B.R. 398, 404 (8th Cir. BAP 1997) (relying on the bankruptcy

court's findings that an attorney-client/ agent-principal relationship was created between the party and the attorney and that notice of the bankruptcy may be imputed as a matter of law); *Green Tree Serv., LLC v. Taylor (In re Taylor)*, 369 B.R. 282, 287 (S.D.W.Va.2007) (finding that notice to the attorney that represented the creditor in a state court action against debtor of the bankruptcy was sufficient notice to creditor); *In re Robinson*, 228 B.R. 75, 82 (Bankr.E.D.N.Y.1998) (finding knowledge of the bankruptcy where both creditor and attorney were on the mailing matrix); *Haile v. N.Y. State Higher Educ. Servs. Corp.*, 90 B.R. 51, 55 (W.D.N.Y. 1988) (holding that creditor willfully violated the automatic stay based upon the knowledge of bankruptcy provided to creditor's attorney in the matter and creditor's collection agency). Here, there is one letter to a different entity and no evidence in the record of GDOR's actual knowledge. Additionally, the Court is unaware of any authority relevant to the facts of this case where service on an individual attorney at an attorney general's office imputes actual notice to a distinct state entity, and Trustee presents no legal authority to support its theory within the context of state agencies.

The letter to Mr. Fears, at best, provides notice to a distinct entity. Trustee cites to *In re Elder* for the proposition that a city's attorney can impute knowledge to the city entity. *In re Elder*, 12 B.R. 491 (Bankr.M.D.Ga.1981). However, in *Elder*, the facts established that the city manager also received notice of the bankruptcy. *Id.* at 492 (determining whether city had sufficient notice within the context of a stay violation claim). Trustee does not establish GDOR's actual knowledge of

the bankruptcy filing and fails to adequately explain how notice to Mr. Fears at the Georgia Department of Law equates to actual notice to GDOR.[8] Accordingly, Trustee has failed to meet its burden and the undisputed facts do not entitle Trustee to judgment as a matter of law. The undisputed facts show neither actual notice to GDOR nor do the facts establish GDOR's actual knowledge. Therefore, GDOR will be granted summary judgment on Count V for turnover.

### B. United States of America/Internal Revenue Service

Several of Trustee's claims rely on a finding that the claimed tax refunds constitute property of the estate. IRS contends that Debtor's claimed refunds are not property of the estate. A determination of whether the funds constitute property of the estate will impact the willful stay violation claim, the § 724(b) claim, the postpetition transfer avoidance and recovery claims, and the turnover claim.

#### 1. The funds at issue were not property of the estate.

■ Section 541(a)(1) provides a broad definition of what constitutes the bankruptcy estate: "all legal and equitable interests owned by debtor at the commencement of the case." 11 U.S.C. § 541(a)(1). It is well established that a debtor's interest in a tax refund claim for prepetition taxable years falls within the broad ambit of § 541(a)(1). *E.g., Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966); *In re Barowsky*, 946 F.2d 1516, 1518–19 (10th Cir.1991) (relying upon *Segal* to hold that portion of tax refund attributable to prepetition portion of a taxable year was property of the bankruptcy estate).

---

8. Actual notice is not defined by the Bankruptcy Code, but Black's Law Dictionary provides that actual notice is "[n]otice given directly to, or received personally by, a party." BLACK'S LAW DICTIONARY, 1164 (9th ed.2009).

The issue before the Court, however, is more nuanced than whether a tax refund claim constitutes property of Debtor's bankruptcy estate. The Court finds that there is a distinction between Debtor's right to a refund or a contingent claim for a prepetition tax refund and the funds themselves. Debtor's *interest* in a prepetition tax refund undoubtedly constitutes property of the estate. *See, e.g., In re Barowsky,* 946 F.2d 1516 (10th Cir.1991); *In re Marvel,* 372 B.R. 425, 429–34 (Bankr.N.D.Ind.2007)(finding that debtor has an interest in advance deposits made toward tax liability but no entitlement to immediate use or enjoyment and that right is subject to filing tax return by due date). The Court cannot hold that the monetary amount of the claimed refunds automatically constitutes property of the estate and is subject to turnover under the facts of this case.

The undisputed facts establish that IRS engaged in an insolvency and fraud assessment after the 2002 and 2003 returns were filed.[9] This assessment highlights why there must be a distinction between the estate's interest in a claimed prepetition tax refund and the funds themselves. In a situation where a debtor's tax return is erroneous or fraudulent, a debtor's claimed refund can not set the amount of the estate's interest in such funds. If so, the bankruptcy estate could receive a windfall based on a debtor's miscalculations or fraudulent behavior.

The joint nature of the claimed refunds and TFRP liability in this case also highlight why property of the estate would only include Debtor's interest in the tax refund and not the actual funds. The Court can not ignore that Trustee's claims encompass non-debtor funds and obligations. Trustee's May 5, 2006 letter to an attorney at the Georgia Department of Law regarding the state refund evidences that Trustee contemplated that Debtor's claim to the tax refund would only amount to a percentage of the claimed refund. Trustee's May 5, 2006 letter states that "84.21% of the requested refund belongs to the bankruptcy estate." While the bankruptcy estate includes Debtor's right to any 2002 and 2003 tax refund or Debtor's interest in such refunds, § 541(a)(1) does not capture the total amount of the claimed 2002 and 2003 refunds.

Additionally, 11 U.S.C. § 505(a)(1) provides a trustee with the ability to determine any unpaid liability of the debtor that has not been contested before or adjudicated by a judicial or administrative tribunal of competent jurisdiction prior to the commencement of the bankruptcy case. Here, Trustee chose not to definitively determine Debtor's tax liability. Instead, Trustee asserts that the entire amount of the claimed tax refund funds for 2002 and 2003 constitute property of Debtor's bankruptcy estate. The funds themselves do not constitute property of Debtor's bankruptcy estate, and are not available to Trustee.

The Court also finds that there is a distinction between a refund and an overpayment. Section 6402(a) of title 26 provides that "[i]n the case of any overpayment, the Secretary ... shall, subject to subsections (c), (d), and (e), refund any balance to such person." Under § 6402(c), the Secretary must reduce the amount of a tax overpayment by the amount of past

---

9. The Court finds it inconsequential that the 2002 refund was initially applied to TFRP liabilities before it was reversed and reviewed. IRS explains that the 2002 joint return was primarily filed under non-debtor James Sissine's social security number and there was no freeze on the account linking it to Debtor's bankruptcy case. The offset was reversed in September of 2006.

due support owed by that person after verification. After this assessment, the Secretary is authorized to refund any remaining balance. 26 U.S.C. § 6402(a); *In re Gould*, 401 B.R. 415, 424–25 (9th Cir. BAP 2009).

 The Internal Revenue Code is clear that a debtor's claimed refund is contingent until it is determined that a debtor is entitled to a refund. Trustee focuses its argument on the contingent nature of Debtor's interest in the refund and analogizes that other similar contingent interests have been found to be included in what constitutes property of the estate. Again, the Court agrees with the general proposition that contingent claims may qualify as property of the estate. *E.g.*, *Westinghouse Elec. Corp.*, 789 F.2d 705, 708 (9th Cir.1986). However, the more relevant question is what is the extent of Debtor's interest in these funds. *See Bracewell v. Kelley (In re Bracewell)*, 454 F.3d 1234, 1237 (11th Cir.2006) (explaining that a debtor's estate cannot be greater than the property rights the debtor had at the commencement of the case). A debtor's claim to a potential refund is distinct from a debtor's interest in the funds themselves. Here, because Debtor never had an interest in the funds at issue, the funds never became property of the estate.

 Under the Internal Revenue Code and the Bankruptcy Code, Debtor's interest in a refund need not extend to the full value of any overpayment. *In re Luongo*, 259 F.3d 323, 335 (5th Cir.2001).

Instead, Debtor only becomes entitled to a tax refund when the Secretary has made any pertinent § 6402(c) adjustments. *Id.* ("The debtor is generally only entitled to a tax refund to the extent her overpayment exceeds her unpaid tax liability."); *In re Gould*, 401 B.R. at 424–25; *Lyle v. Santa Clara County Dept. of Child Support Servs.*, 324 B.R. 128, 131 (Bankr.N.D.Cal. 2005) (determining what portion of the overpayment amounts to a refund is based on the statutory provisions of the Internal Revenue Code). A taxpayer's overpayment does not create a right to the funds. Rather, the IRS must first determine that the overpayment should become a refund. Only then does the taxpayer have a right to receive the funds. *In re Pigott*, 330 B.R. 797, 802 (Bankr.S.D.Ala.2005) ("[T]axpayer only has a refund right after the IRS has credited any overpayments to other unpaid taxes."); *In re Shortt*, 277 B.R. 683, 688 (Bankr.N.D.Tex.2002) (determining that if the amount of the tax overpayment is completely offset then "there is no net refund to become property of the estate"). "Since an overpayment is not credited to the debtor until after offsets have occurred, if the IRS chooses to make such offset, there is no property interest in a debtor until the refund has been declared." *In re Pigott*, 330 B.R. 797, 802 (Bankr.S.D.Ala.2005).

Trustee relies on caselaw that appears to reject a distinction between an overpayment and refund.[10] In *In re Chateaugay Corp.*, the Second Circuit interpreted the tax intercept statute in § 6402 as simply providing the IRS a right of setoff against

---

10. Trustee also cites *In re Wade Cooke Financial Corporation* to support its position that the statutory scheme of the Internal Revenue Code, including 26 U.S.C. § 6402, does not supplant § 553's requirements. *In re Wade Cook Fin. Corp.*, 375 B.R. 580, 594 (9th Cir. BAP 2007). The Court is not assessing setoff requirements under the Bankruptcy Code,

only the IRS's post-discharge application of overpayment funds from prepetition tax returns against prepetition TFRP liabilities. The issues regarding mutuality and whether a right to setoff exists distinguish *Wade Cook* from the more factually similar cases relied upon by the Court above.

tax overpayments and nothing more. *Aetna Cas. & Sur. Co. v. LTV Steel Co. (In re Chateaugay Corp.)*, 94 F.3d 772, 781 (2d Cir.1996). It explained that reading § 6402(a) as providing more than a right to setoff would ignore that all offsetting actions involve "accounting procedures." *Id.* at 780. The court stated that "nothing in the Bankruptcy Code or its legislative history indicates that Congress intended a special exception for the tax collector." *Id.* (citing *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 209, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *U.S. v. Norton*, 717 F.2d 767, 772 (3d Cir.1983)). The Second Circuit concluded, in dicta, that setoff under § 6402 would require permission of the bankruptcy court.[11]

*In re Chateaugay* can be distinguished from this case on several issues, but it is significant to this Court that in *Chateaugay* the Court was asked to evaluate the debtor's and its affiliates' interest in funds within the context of multiple, competing setoff interests in the funds. *In re Chateaugay Corp.*, 94 F.3d at 781 (the surety, Department of Labor, and the IRS were all claiming setoff rights). The mutuality requirement of setoff was also at issue. *Id.* at 781–82. Here, IRS is the only party asserting setoff rights of undisputed prepetition funds and prepetition liabilities. There are also shortcomings in the dicta relied upon by Trustee in *Chateaugay*. Although the Second Circuit states that § 6402 application is comparable to any other setoff actions, this Court respectfully disagrees. A federal statute's mandate provides a compelling distinction from a contractual or common law right to setoff.

The funds at issue do not constitute property of the estate. Debtor's claim to a tax refund does not equate to the claimed funds being property of the estate. Here, Debtor's right to a refund is included in the bankruptcy estate, but Debtor's interest in those funds are limited by IRS review, the non-debtor's right to the funds, and the application of 26 U.S.C. § 6402.

### a. There is no violation of the automatic stay.

Trustee asserts that IRS violated the automatic stay under 11 U.S.C. §§ 362(a)(3), (6) and (7) by retaining claimed refunds, assessing the TFRP liabilities, and by offsetting the 2002 and 2003 claimed refunds against Debtor's and Mr. Sissine's TFRP liabilities after Debtor's Chapter 7 discharge. Only Debtor's right to a refund is included in Debtor's estate and protected by the automatic stay. None of the actions taken by the IRS interfered with Debtor's interest in the prepetition tax refund or her right to a refund; therefore, the IRS committed no stay violation.[12]

■ IRS' review and retention of the funds does not constitute a stay violation under § 362(a)(3), which prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The funds were not property of the estate and the IRS actions did not interfere with Debtor's right to a prepetition tax refund.

Further, the automatic stay could not have extended to Mr. Sissine's portion of the joint claimed tax refund. The actions of the IRS from September 2006, when the

11. There is no suggestion of any basis for a court to deny permission to make a setoff if a request were made. *See In re Gould*, 401 B.R. 415, 426–27 (9th Cir. BAP 2009). No adequate protection is available.

12. Since U.S. turned over $6,868.16 to Trustee following the March 4, 2010 hearing, Trustee's stay violation claim with respect to said funds will not be addressed in this Order.

reversal of the 2002 claimed refund was applied to the TFRP liabilities occurred, to June 28, 2007, the date of Debtor's discharge, did not include any permanent action. The Supreme Court's setoff analysis from *Citizens Bank of Maryland v. Strumpf* is instructive here. In *Strumpf*, a bank's five day administrative hold, where the bank refused to pay withdrawals from the checking account that would reduce the balance below the bank's asserted claim amount, was held not to violate the automatic stay. *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). The bank filed a motion for relief from stay following the five-day administrative hold. *Id.* at 18, 116 S.Ct. 286. The Supreme Court's determination that the bank had not violated the automatic stay was predicated, in part, on the bank's prompt and non-permanent actions. *Id.* at 19, 116 S.Ct. 286 (determining that the intention of the bank was to make an assessment, not to take permanent action).

Although this case can easily be distinguished from *Strumpf* based on the timeline for assessment and review and the IRS's decision to not move for relief from the automatic stay, the undisputed facts show that no permanent action was taken by IRS prior to discharge. The Court certainly does not view IRS's failure to move for relief from stay as a preferred course of conduct in this or factually similar scenarios. However, the undisputed facts establish that IRS was merely reviewing the 2002 and 2003 returns for the period preceding Debtor's discharge. This review included a fraud analysis and involved claimed refunds by a non-debtor and non-debtor TFRP obligations. The review, although lengthy, did not amount to any permanent action against Debtor. In fact, the IRS continued review of the 2003 return after Debtor's June 28, 2007 discharge. The review for the 2003 return

was completed August 26, 2007 and offset against the TFRP liabilities occurred on September 17, 2007.

Because the IRS's actions did not interfere with property of the estate, which is limited to Debtor's right to a prepetition refund or Debtor's interest in such a refund, and because no permanent actions were taken by IRS prior to discharge, IRS commit no stay violation under § 362(a)(3).

■ Trustee also asserts that the assessment of the TFRP liabilities violated the automatic stay under § 362(a)(6). IRS committed no stay violation in its postpetition assessment of TFRP liabilities because § 362(b)(9)(D) explicitly excepts such an assessment from the automatic stay. Section 362(b)(9)(D) excepts "the making of an assessment for any tax." 11 U.S.C. § 362(b)(9)(D).

■ Trustee also claims IRS violated the stay under § 362(a)(7) with its post-discharge setoff of claimed refunds against TFRP liabilities. Trustee emphasizes the addition of an automatic stay exception by BAPCPA to support his stay violation claim. Section 362(b)(26), as enacted by BAPCPA, excepts setoff of an income tax refund by appropriate government units. Trustee submits that the absence of such an exception in the applicable pre-BAPCPA law demonstrates that the stay would have protected such funds. Certainly, BAPCPA's addition of § 362(b)(26) would seem to clarify that qualifying actions by governmental units would have a statutory basis under the Bankruptcy Code to find an explicit exception to the automatic stay, but the Court is unwilling to interpret the addition of § 362(b)(26) as a conclusive reason that pre-BAPCPA law prevents IRS from exercising its valid setoff rights under these facts. Further, it seems that § 362(b)(26) is limited to setoff of income tax liabilities.

Again, the determination that property of the estate only includes Debtor's claim or interest in the 2002 and 2003 tax refunds, separate and apart from the funds at issue, provides a sufficient basis to find that IRS did not violate § 362(a)(7). Additionally, Trustee's setoff claim and his analysis does not satisfactorily address the asserted setoff stay violation according to the specific facts of this case. First, the setoff of the 2002 and 2003 claimed refunds against TFRP liability occurred post-discharge. Debtor received a Chapter 7 discharge on June 28, 2007. The application of the 2002 and 2003 funds occurred on July 30, 2007 and September 17, 2007, respectively. The stay against setoff and any other actions under subsection (a) of § 362 expires upon a Chapter 7 discharge. 11 U.S.C. § 362(c)(3)(C). Second, Trustee's analysis doesn't address that the claimed refunds were from a joint return, which included a non-debtor, and that Debtor and Mr. Sissine had joint TFRP obligations.

The established setoff right of IRS under these facts also influences the Court's determination that IRS did not violate the automatic stay with its post-discharge offsets. Even if the automatic stay were applicable to the funds at issue, the Court can not construct a legal basis to deny IRS's right to setoff. At the March 4, 2010 oral argument hearing, counsel for Trustee also failed to set forth any plausible defense to IRS's setoff right.

 IRS's setoff rights, the determination that IRS committed no stay violation, and Trustee's inability to establish an injury to Debtor's bankruptcy estate support a denial of Trustee's summary judgment claim for willful violation of the automatic stay. Section 362(h)'s award of actual damages is predicated on "an *injured* individual." 11 U.S.C. § 362(h)(1)(emphasis added). Actual damages are available only upon a showing that an individual suffered an injury. *Id.; In re Bucciarelli*, 2008 WL 7874771, 2008 Bankr.LEXIS 3819 (Bankr.N.D.Ga. July 21, 2008); *Hutchings v. Ocwen Federal Bank, FSB (In re Hutchings)*, 348 B.R. 847 (Bankr.N.D.Ala.2006) ("The plain language of section 362(h) of the Bankruptcy Code explicitly requires, as a prerequisite to maintaining such an action, that a debtor must have first been 'injured' by the stay violation."). "[A]bsent proof of injury, a technical violation of the stay, no matter how willful, is not enough to support an award of damages." *In re Palumbo Family Ltd. P'ship*, 182 B.R. 447, 471 (Bankr.E.D.Va.1995).

Suspending a determination as to whether Trustee qualifies as an individual under § 362(h), Trustee fails to demonstrate any injury to the bankruptcy estate. The Eleventh Circuit has held that a court cannot deny a party's valid offset rights in lieu of damages even with a stay violation. *U.S. v. Ruff (In re Rush–Hampton Indus., Inc.)*, 98 F.3d 614, 616 (11th Cir.1996); *U.S. v. Jones (In re Jones)*, 230 B.R. 875, 883 (M.D.Ala.1999). Trustee fails to establish a stay violation and any injury to the bankruptcy estate, therefore, no finding of a willful stay violation is justified. Because IRS did not violate the automatic stay and IRS has valid setoff rights that prevent Trustee from establishing damage to Debtor's estate, U.S. is entitled to judgment as a matter of law as to Count I.

**b. Section 724(b) is not an available claim for Trustee.**

 Trustee seeks to use § 724(b) as a theory of recovery against IRS. Section 724(b) provides, in relevant part:

Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax or its

proceeds shall be distributed in the following manner:

(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

(2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

11 U.S.C. § 724(b). Trustee asserts that the retention of the claimed refunds or overpayments to satisfy TFRP liabilities elevated the satisfaction of tax liens, as § 507(a)(8) priority claims, over the satisfaction of legitimate § 507(a)(1) administrative expenses. This theory of recovery is not available to Trustee. Primarily, Trustee has failed to establish that the funds at issue are "property in which the estate has an interest." Based on the determination Debtor's right to a refund is distinct from the actual funds constituting property of the estate, Trustee can not avail himself of § 724(b)'s distribution scheme.

The inability to establish that the funds at issue are "property in which the estate has an interest" is fatal to Trustee's claim, but there are additional issues with this claim. First, the Court has no authority to support Trustee's claim that § 724(b) creates a cause of action for Trustee. The language of the statute appears to be limited to distribution and applicable only after the property subject to the lien or such proceeds has been recovered by the trustee. Second, Trustee doesn't establish that § 724(b)'s subordination would trump IRS's § 553 setoff rights. Third, § 362(b)(9)(D) makes § 724(b) inapplicable because pursuant to § 362(b)(9)(D) no tax lien ever attached and the property or proceeds were never transferred to the debtor. Section 362(b)(9)(D) states, in relevant part, that:

any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor.

11 U.S.C. § 362(b)(9)(D). Trustee counters that § 724(b) only requires that the property would be subject to a lien. However, it is still unclear as to how Trustee proposes for a § 724(b) claim to arise. Without a means to recover the funds and without possession of the funds, § 724(b) is inapplicable under these facts and in this case. Therefore, Trustee's failure to establish the elements of the claim prevent summary judgment in his favor. The undisputed facts in the record support granting summary judgment to U.S. as to Count II.

### c. Trustee's postpetition avoidance and recovery claims fail.

Trustee asserts that IRS is liable under § 549 for unauthorized postpetition transfers of estate property by two acts: (1) the postpetition assessment of TFRP liabilities and resulting self-executing tax liens pursuant to 26 U.S.C. §§ 6321 and 6322 and (2) offsetting the 2002 and 2003 claimed refunds against TFRP liabilities. Trustee seeks to recover the purported avoidable funds under § 550. Trustee is not entitled to avoid and recover these alleged transfers. First, Trustee's theory of recovery based on the self-executing tax lien pursuant to 26 U.S.C. §§ 6321 and 6322 is limited by § 362(b)(9)(D). Section 362(b)(9)(D) limits the attachment of tax liens unless the tax debt is nondischargeable and the property or proceeds at issue

are transferred to the debtor. 11 U.S.C. § 362(b)(9)(D).

The parties agree that IRS made its TFRP assessments postpetition. The Court need not make any determination regarding whether tax liens are self-executing pursuant to 26 U.S.C. §§ 6321 and 6322,[13] because if such liens would otherwise arise, § 362(b)(9)(D) prevents the liens from taking effect under these facts.

■ Trustee's second attempt to avoid and recover a purported unauthorized postpetition transfer similarly fails. IRS's post-discharge application of the 2002 and 2003 refunds to the TFRP liabilities are not eligible for avoidance and recovery. Section 549 provides the trustee with power to avoid a "transfer of property of the estate." Here, the funds at issue do not constitute property of the estate and avoidance and recovery under §§ 549 and 550 are unavailable to Trustee. Therefore, U.S. is entitled to judgment as a matter of law as to Counts III and IV.

### d. Turnover is only applicable to property of the estate.

■ The determination that only Debtor's right to a refund constitutes property of the estate is similarly fatal to Trustee's turnover claim under § 542(a). The affirmative duty to turnover property is limited to property of the estate. Section 542(a) is limited to the turnover of "property that the trustee may use, sell, or lease ... or that the debtor may exempt." 11 U.S.C. § 542(a). Section 542(b) provides similar limiting language: "an entity that owes a

debt that is property of the estate and that is matured ... shall pay...." 11 U.S.C. § 542(b). Turnover is also limited by any § 553 setoff rights. 11 U.S.C. § 542(b)("except to the extent that such debt may be offset under section 553 of the title against a claim against the debtor"). The record before the Court presents no facts that would jeopardize IRS's valid setoff rights;[14] therefore, IRS has no turnover liability and U.S. is entitled to judgment as a matter of law as to Count V.

### 2. Trustee's claim for money had and received is dismissed.

■ Count VI asserts a claim against U.S. for money had and received. U.S. moved to dismiss the claim based on a lack of jurisdiction in its Motion for Summary Judgment. From the Court's review of the record, Trustee has not dismissed the count, but it is not asserted in Trustee's Motion for Summary Judgment or included in any of Trustee's responses to U.S.'s Motion for Summary Judgment.

■ Trustee's claim for money had and received has no jurisdictional basis against U.S. Generally, U.S. is protected by sovereign immunity and is immune from suit unless it consents to suit or there is clear congressional intent to allow suits against the United States. *U.S. v. Mitchell*, 445 U.S. 535, 538–39, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *U.S. v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Trustee has neither asserted that U.S. waived sovereign immunity nor has it

**13.** *Compare U.S. v. Nat'l Bank of Commerce,* 472 U.S. 713, 719–20, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985) (identifying two methods for the IRS to execute such broad powers: lien-foreclosure suit and "the collection of the unpaid tax by administrative levy") *with* 26 U.S.C. § 6322 ("the lien imposed by section 6321 shall arise at the time the assessment is made").

**14.** U.S. has a common law and statutory right to setoff. *U.S. v. Munsey Trust Co. Of Washington, D.C.,* 332 U.S. 234, 239, 108 Ct.Cl. 765, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947); *In re Carpenter,* 367 B.R. 850, 856–57 (Bankr. M.D.Fla.2006).

presented any evidence of such a waiver. In the absence of jurisdiction over the claim, Count VI is dismissed against U.S.

## III. CONCLUSION

Defendants are entitled judgment as a matter of law. The material facts are undisputed and Defendants have satisfied their burden. Inadequate notice to GDOR prevents Trustee from recovering the state refunds. Trustee's claims, premised on Debtor's bankruptcy estate including the funds from the Sissines' 2002 and 2003 claimed refunds, fail for the reasons set forth in detail above. The particular facts of this case highlight the distinction between including a debtor's right to a pre-petition tax refund in the bankruptcy estate and whether the sums asserted in a claimed refund constitute property of the estate. Here, IRS's valid setoff rights, the joint returns and joint TFRP liabilities, Trustee's inability to provide adequate protection to IRS, and the absence of injury to Debtor's bankruptcy estate limit Trustee's claims to the funds. Accordingly, it is

**ORDERED** that Trustee's Motion for Summary is hereby **DENIED.**

It is **FURTHER ORDERED** that Defendant Georgia Department of Revenue's Motion for Summary Judgment is hereby **GRANTED** with respect to Count V's turnover claim.

It is **FURTHER ORDERED** that Defendant United States of America's Motion for Summary Judgment is hereby **GRANTED** with respect to Counts I, II, III, IV, and V.

It is **FURTHER ORDERED** that Defendant United States of America's Motion to Dismiss is hereby **GRANTED** with respect to Count VI.

A separate judgment will be entered contemporaneously herein in accord with this Order. The Clerk is directed to serve a copy of this Order on Plaintiff, Defendant, and their respective counsel.